IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| PAUL DARVIN MCDANIEL, § | | |
| TDCJ No. 02251020, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| V. § | | W-21-CV-743-ADA |
| § | | |
| BOBBY LUMPKIN, Director, § | | |
| Texas Department of Criminal Justice, § | | |
| Correctional Institutions Division, § | | |
| § | | |
| Respondent. § | | |

### ORDER

Before the Court are Petitioner Paul Darvin McDaniel's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Bobby Lumpkin's Answer (ECF No. 12), and Petitioner's Rebuttal (ECF No. 14). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

### I. Background

In March 2018, Petitioner was charged with one count of continuous sexual abuse of a child under fourteen.[1] (ECF No. 13-13 at 67.) On February 3, 2019, a jury convicted Petitioner of the charge and the trial court sentenced him to fifty years imprisonment.

---

[1] An amended indictment, charging the same offense, was filed on February 22, 2019. (ECF No. 13-13 at 68.)

*State v. McDaniel*, No. F072-18 (66th Dist. Ct., Hill Cnty., Tex. Feb. 13, 2019). (*Id.* at 86-88.) The following is a summary of the factual allegations against Petitioner.[2]

At trial, Sandy Billington testified she works for the Levelland Independent School District as a school counselor for the 4th and 5th grade. Billington testified that after doing a guidance lesson about personal safety, the complainant, L.J., told Ms. Billington that her uncle touches her in places where her bathing suit covers and does "it" to her. L.J. said the sexual abuse occurred on more than one occasion, and that she was apprehensive about seeing her uncle during the Christmas holidays. Sandy Billington called Child Protective Services to report the L.J.'s outcry of sexual abuse.

Louis Delgado testified that he is an investigator with Child Protective Services in Levelland, Texas. Through the course of his investigation, Delgado heard L.J. allege she was sexually abused by her uncle, Paul McDaniel, on more than one occasion, in more than one location, and that the sexual abuse had been occurring since she was in the first grade.

L.J. testified that her birthday is June 1, 2006, and she lives in Levelland, Texas. L.J. testified she was adopted by Kevin and Deana Ebling and her younger biological sister that was adopted by Paul and Michelle McDaniel. She testified Paul McDaniel began sexually abusing her when she was in first grade by touching the inside of her private part with his hands. This type of abuse occurred on many occasions.

In the summer of 2017, Paul McDaniel was living in Aquilla, Texas and L.J. went to stay at his house in Aquilla for about three weeks to visit her biological sister. While

---

[2] This is an abbreviated version of factual summary provided by the State in Petitioner's direct appeal.

2

staying in Aquilla, L.J. would sleep in living room, and sometime sleep in the boy's bedroom. When she went to sleep, McDaniel would enter the room and touch the inside of her private part with his fingers, and this occurred almost every night she stayed at his house. L.J. testified that in June 2017, McDaniel made her touch his private part under his clothes with her hand in his pickup truck after a softball game in Hillsboro, Texas. After going back to her home in Levelland for the last two weeks of July, L.J. returned to Aquilla with McDaniel, where the sexual abuse continued.

On one occasion after August 1, 2017, L.J. walked to a travel trailer to get some chips for dinner when McDaniel pushed her on her stomach on the bed, took off her clothes, and put his private parts into hers while she was bent over the bed. L.J. testified that when McDaniel put his private part inside her private part it hurt, but that it did not last long because her cousin Keyle began walking to the trailer and McDaniel hurried into the bathroom. McDaniel told L.J. to not tell anyone about what happened or else she would be the one to get in trouble. Keyle found out about the abuse from one of L.J.'s notebooks. He then told McDaniel's wife Michelle about the sexual abuse. L.J. testified Michelle confronted McDaniel about the sexual abuse and McDaniel started crying and said it would not happen again. McDaniel did not abuse L.J. again.

Kevin Ebling testified he had known McDaniel most of his life and that their families were close before the allegations of sexual abuse. Ebling testified that his daughter L.J. stayed at McDaniel's house in Aquilla, Texas, from sometime in May until mid-June and then she went back to McDaniel's house on August 1, 2017, and stayed there until it was

3

time for her to go back to school. Ebling testified that, as far as he knew, his sister Michelle never reported L.J.'s outcry of sexual abuse to the authorities.

John Wuerflein testified that he is employed as a forensic interviewer of children by the Children's Advocacy Center in Lubbock, Texas. Wuerflein testified that on December 5, 2017, he interviewed an 11-year-old L.J. regarding alleged sexual abuse. L.J. told Wuerflein that her uncle, Paul Darvin McDaniel, had sexually abused her in both Levelland and in Aquilla, Texas, and the sexual abuse continued through the summer of 2017. L.J. told Wuerflein McDaniel would put his fingers inside her private part and move his fingers, and once had pulled his pants down in his truck and made her touch his private part with her hands. L.J. told Wuerflein about the assault in the travel trailer and that McDaniel only stopped when L.J.'s older cousin started walking to the trailer.

Patricia Salazar testified that she is a sexual assault nurse examiner at the Care Center Outreach under the Department of Pediatrics at Texas Tech University and has performed 4,319 sexual assault nurse exams (SANEs) on children who have made outcries of sexual abuse. Salazar testified it is not always medically possible to determine if a child has been penetrated in their vagina and that it is considered abnormal to have physical findings of sexual abuse in most anogenital examinations. Salazar testified she examined L.J. on December 7, 2017, and did not find any physical evidence of damage to L.J.'s vagina or anus. She further testified she would not expect to see any physical signs of sexual abuse in an exam done in December if the sexual abuse last occurred in August. Salazar testified L.J. told her the sexual abuse from McDaniel began when she was around 6 or 7 and continued until she was 11. (7 RR 134).

Judy Oden testified for the defense that she is McDaniel's mother-in-law and lives with Michelle McDaniel on the property in Aquilla where alleged abuse occurred. Oden testified that, on August 12, 2017, her travel trailer was at the McDaniel residence and McDaniel went to the trailer to get cups and L.J. was then asked to get chips from the travel trailer. Oden testified McDaniel was gone for less than 10 minutes, L.J. walked to the trailer 4 or 5 minutes after McDaniel, and they were alone in the trailer for 4 or 5 minutes. Oden testified the slide of the travel trailer was pushed in that day, and that with the slide push in, the hallway in the trailer in only measured eight inches wide.

John Wayne Yoner, Jr., testified for the defense that McDaniel is his nephew and that he and his wife own the 11 acres and the double wide trailer where McDaniel was living. Yoner testified he was at the party in August 2017, and saw McDaniel walk to the trailer to get some plastic cups while standing at the kitchen window getting a glass of water. Yoner testified L.J. was then asked to go to the trailer to get chips, and that after Yoner finished filling his glass of water and sat down at a table for 30 seconds, McDaniel and L.J. came back inside the house. Yoner further testified that the slide of the travel trailer was in that day, and the "slide was kept in almost 100 percent of the time" but later admitted the slide was out in the aerial photograph. Yoner later testified that McDaniel and L.J.'s trip to the travel trailer did not take "more than a minute and a half."

On November 13, 2019, Petitioner's conviction was affirmed on appeal. *McDaniel v. State*, No. 10-19-00076-CR, 2019 WL 6049942 (Tex. Ct. App.—Waco, Nov. 13, 2019, no pet.). Petitioner did not file a petition for discretionary review with the Texas Court of

5

Criminal Appeals (TCCA) or a petition for a writ of certiorari with the United States Supreme Court. (ECF No. 1 at 3.)

On May 20, 2020, Petitioner executed a pro se state habeas corpus application, listing the following grounds of relief:

1. Trial counsel provided ineffective assistance during the guilt/innocence phase when counsel failed to object to the improper opinion testimony of Louis Delgado, Kevin Ebling, John Wuerflein, and Patricia Salazar as bolstering the complainant's credibility.

2. Trial counsel provided ineffective assistance of counsel during the guilt/innocence phase when counsel failed to object to Patricia Salazar's medical report which showed no physical indication of sexual abuse.

3. Trial counsel provided ineffective assistance during the guilt/innocence phase by failing to request a lesser-included offense be added to the jury charge.

4. There are material differences between the indictment and the application paragraph in the jury charge, resulting in Petitioner being convicted without the jury making a finding on each and every element of the offense.

5. Trial counsel so utterly failed to defense against the charges that the trial was the functional equivalent of a guilty plea. *See United States v. Cronic*, 466 U.S. 648 (1984).

(ECF No. 13-13 at 3-18.) On December 23, 2020, the TCCA denied Petitioner's application without written order. *Ex parte McDaniel*, No. WR-91,427-01 (Tex. Crim. App. Dec. 23, 2020.) (ECF No. 13-10.)

On July 9, 2021, Petitioner executed his federal habeas petition, listing the same grounds of relief[3] from his state habeas corpus application. (ECF No. 1.) Respondent

---

[3] In Petitioner's rebuttal to Respondent's answer, he adds an additional ground for relief: that defense counsel was ineffective when counsel failed to object to the admission and reading to the jury of Petitioner's prior, extraneous offenses. (ECF No. 14 at 3.) This claim is not properly before the Court because Petitioner failed to include it in his formal petition for habeas corpus relief. Further, this claim is unexhausted and therefore procedurally barred from federal habeas relief because Petitioner failed to include it in his state habeas application. *See Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (When a petitioner "fails to

Lumpkin answered the petition (ECF No. 12) and Petitioner has filed his rebuttal (ECF No. 14.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness always should be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show

---

exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" a petitioner's claim is procedurally defaulted from federal habeas review.) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

7

that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

Where, as here, there is no reasoned state court decision, the Court "'must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (quoting *Richter*, 562 U.S. at 102). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

<u>1. Ineffective Assistance of Counsel (claims 1-3, 5)</u>

Four of Petitioner's five claims allege that his trial counsel provided ineffective assistance throughout the guilt/innocence phase of his criminal trial. The Sixth

8

Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced the petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "'doubly deferential'" standards of both *Strickland* and § 2254(d). *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

a. *Failure to Object to Testimony (claims 1-2)*

In Petitioner's first two claims for relief, he argues his trial counsel provided ineffective assistance when counsel failed to object to the opinion testimony of Louis Delgado, Kevin Eberling, John Wuerflein, and Patricia Salazar as bolstering the complainant's credibility. Petitioner points to the following testimony: (1) Louis Delgado replying "no" when the prosecutor asked him "And was there anything about what you observed [during the forensic interview] that would cause you to doubt what she was saying?" (ECF No. 13-7 at 48); (2) Kevin Eberling responding "No, sir" when the prosecutor asked him "Do you know of any reason that your daughter [L.J.] would be untruthful about these allegations against Paul Darvin McDaniel?" (*id.* at 91); (3) John Wuerflein responding "no" to the prosecutor asking "And was there anything that you thought that was unusual that caused you any alarm about [the complainant being "very soft spoken, very sullen, very laid back" during the forensic interview]?" (*id.* at 110); and

(4) Patricia Salazar, the SANE nurse, stating "I did think she was being, just in my opinion, she was being truthful about what she said" when the prosecutor asked her "And what were your impressions of [L.J.] when she was telling you about the sexual abuse?" (*id.* at 133.) Petitioner also argues his counsel should have objected when Salazar testified to her diagnosis— "sexual abuse by history"—four times in her testimony and that these comments was made directly to bolster the credibility of the complainant.

Because there is no reasoned state court decision for this Court to review, the Court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (quoting *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

Trial counsel has broad discretion when it comes to deciding how best to proceed strategically. *See Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) (the Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client"). This Court is mindful that "Strickland does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v. Quarterman*, 455 F.3d 529, 534 (5th Cir. 2006). In other words, simply because counsel's strategy was not successful does not mean counsel's performance was deficient. *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009).

As Petitioner notes, there was no physical evidence of the complainant's sexual abuse and there were no witnesses to any of the incidents. Therefore, it seems likely that defense counsel's trial strategy involved discrediting the complainant and her allegations.

11

Under state evidentiary rules, non-expert testimony may be offered to support the credibility of a witness in the form of opinion or reputation, but "the evidence may refer only to character for truthfulness or untruthfulness." TEX. R. EVID. 608(a)(1). As a result, the testimony from Delgado, Eberling, and Wuerflein was admissible and any objections to it would have been overruled. *See Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).

Ms. Salazar's testimony, however, that "I did think she was being, just in my opinion, [L.J.] was being truthful about what she said" was likely inadmissible and objectionable. Under Texas law, it is improper for a medical expert to make "a direct comment on the credibility of the complaining witness." *Salinas v. State*, 166 S.W.3d 368, 371 (Tex. Ct. App.—Ft. Worth 2005, pet. ref'd). As a result, an objection to this testimony would likely have been granted.

It is plausible that defense counsel's failure to object to Ms. Salazar's testimony was part of his trial strategy, believing "that the dangers inherent in objecting—losing the objection or appearing obstructionist to the jury—outweighed the marginal benefit in preventing the bolstering. Such a calculation was surely the defense counsel's to make." *Knox v. Johnson*, 224 F.3d 470, 480 (5th Cir. 2000). Yet, even if counsel erred in failing to object to parts of Ms. Salazar's testimony, Petitioner must still show he was prejudiced by the error: he must show that if counsel had objected, there is a substantial likelihood that the result of the trial would have been different. Several people testified on the complainant's behalf, and the complainant herself testified. Further, the individuals who

12

testified on Petitioner's behalf—his mother-in-law and his uncle—provided limited support and their testimony about the trailer slider was impeached on cross-examination with an aerial photo. Petitioner has therefore failed to show that, had defense counsel objected to Ms. Salazar's testimony, there is a substantial likelihood that the outcome of the trial would have been different. Accordingly, the state habeas court's application of *Strickland* to these claims is not unreasonable, and they are denied.

### b. Failure to Request Lesser-Included Offense (claim 3)

In Petitioner's third claim, he argues his trial counsel provided ineffective assistance when counsel failed to request a jury instruction on the lesser-included offense of aggravated sexual assault. Petitioner argues he was prejudiced when then the jury was charged with finding Petitioner guilty of continuous sexual abuse of a child or nothing at all.

To determine whether a jury instruction for a lesser offense should be given, Texas law requires that: (1) "the lesser included offense must be within the proof necessary to establish the offense charged"; and (2) "there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense." *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009). Under Texas law, a person is guilty of continuous sexual abuse of a young child if, during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse. TEX. PENAL CODE. ann. § 21.02(b)(1). Here, the complainant testified to multiple instances of sexual abuse, beginning from when she was approximately six years old, and also testified the Petitioner was abusing

her at his home and the baseball field during the three weeks in May to June 2017 when she was in Aquilla, and then sexually assaulted her in the trailer in August 2017.

In denying this claim in Petitioner's state habeas application, the TCCA could have reasonably concluded that either a lesser-included offense instruction was not warranted or that defense counsel had a strategic reason for not asking for a lesser-included offense instruction. It is possible that defense counsel made the strategic decision not to request a lesser-included instruction, concluding that the jury would have to acquit Petitioner if they didn't believe all of the complainant's allegations. Absent a violation of the Constitutional, a federal habeas court must defer to the state court's interpretation of its law on whether a lesser-included offense instruction is warranted, *Creel v. Johnson*, 162 F.3d 385, 390-91 (5th Cir. 1998), and counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument, *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007). Additionally, counsel's strategic choices, when made after an investigation of the facts, are "virtually unchallengeable" under the *Strickland* analysis. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *see also Geiger v. Cain*, 540 F.3d 303, 310 (5th Cir. 2008) (finding counsel had a legitimate, strategic reason for failing to request a jury instruction on accomplice testimony).

Because the state court could have reasonably concluded that a motion for a lesser-included offense instruction was not likely to succeed, or that counsel's decision not to request such an instruction was strategic because it allowed for the possibility of acquittal on the continuous sexual abuse charge, the state court's decision was not an unreasonable application of *Strickland* and this claim is denied.

14

c. The Cronic Standard (claim 5)

In Petitioner's last claim for relief based on ineffective assistance of counsel, he argues his trial counsel "so utterly failed to defend against the charges that the trial was the functional equivalent of a guilty plea." Petitioner incorporates his allegations for first three claims of ineffective assistance and references United States v. Cronic, 466 U.S. 648 (1984).

The Sixth Amendment right to counsel means that "a defendant is entitled to be represented by counsel at all critical stages of a criminal proceeding against him." United States v. Taylor, 933 F.2d 307, 312 (5th Cir. 1991) (citing Mempa v. Rhay, 389 U.S. 128, 134 (1967); Gideon v. Wainwright, 372 U.S. 335, 342-43 (1963)). Again, Strickland requires a petitioner to show both that counsel's performance was deficient and that the petitioner was prejudiced as a result. However, in United States v. Cronic, the Supreme Court recognized three situations involving circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified": (1) the "complete denial of counsel" during a critical stage of the proceedings; (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where surrounding circumstances make it "unlikely that any lawyer could provide effective assistance." 466 U.S. 648, 658-59 (1984); Bell v. Cone, 535 U.S. 685, 695-96 (2002).

Petitioner does not make any specific allegations relating to the three situations outlined in Cronic. Rather, he appears to argue that the cumulative effect of his defense counsel's errors rendered counsel's representation a complete failure. See, e.g., Richards

15

*v. Quarterman*, 566 F.3d 553, 571 (5th Cir. 2009) ("Based on our review of the record and considering the cumulative effect of [defense counsel]'s inadequate performance, we think it is extremely likely that, but for [defense counsel]'s objectively unreasonable representation of Richards, the jury would have . . . convicted Richards of, at most, aggravated assault."). However, the record only supports one instance where defense counsel potentially erred—in failing to object to Ms. Salazar's opinion testimony on the complainant's credibility—and it is plausible this was not an error but rather a strategic decision. In any event, Petitioner has failed to show that he was prejudiced by any of defense counsel's alleged errors, and thus cannot show that the cumulative effect of them rendered counsel's representation a complete failure. The state habeas court's application of *Strickland* to this claim was not unreasonable and this claim is denied.

2. Jury Charge Error (claim 4)

In Petitioner's final claim for relief, he argues the jury charge failed to track the indictment for the charged offense because it did not contain the jurisdictional element (Hill County, Texas) and omitted the element "during a period of 30 or more days in duration." As a result, Petitioner was convicted of continuous sexual abuse of a child without a finding on each element of the charged offense.

Improper jury instructions in state criminal trials do not generally form a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). The relevant inquiry on claims of improper jury instructions is not whether state law was violated, but whether there was prejudice of constitutional magnitude. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). Errors in jury instructions

16

are subject to harmless-error analysis. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). As a result, habeas relief is not warranted unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993); Galvan, 293 F.3d at 764-65. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In a collateral proceeding, the question is not "whether the instruction is undesirable, erroneous, or even universally condemned," but "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Cupp*, 414 U.S. at 147).

> The first paragraph of the jury charge is as follows:
>
> The Defendant, PAUL DARVIN MCDANIEL, stands charged in the indictment with the offense of Continuous Sexual Abuse of a Young Child, alleged to have been committed during a period that was 30 days or more in duration namely from on or about May 27, 2017, through August 19, 2017, in Hill County, Texas. To this charge the Defendant has pled not guilty.

(ECF No. 13-13 at 69.) The trial judge also read the paragraph, and the entire charge, to the jurors. (*Id.* at 195-96.) It is not clear what part of the charge Petitioner believes erroneously omitted the elements to which he refers. In his rebuttal, Petitioner did not respond to the State's argument that this claim should be denied.

The TCCA could have reasonably concluded that the facts did not support Petitioner's claim, and alternatively, if there was an error, it did not so infect the entire trial that the resulting conviction violated due process. Under the AEDPA, the state court's

17

findings are presumed correct unless the Petitioner rebuts them with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has failed to provide any evidence supporting his claim, and it is therefore denied.

## **IV. Certificate of Appealability**

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues

presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue.

**SIGNED** this 23rd day of February, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE